IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK HUTTON and CLEAR MEADOW
INVESTMENT LLC,

            Plaintiffs,

vs.                                   Case No. 07-2041-JTM

DEUTSCHE BANK AG, *et al.*,

            Defendants.

**MEMORANDUM ORDER**

Presently before the court are defendants Deutsche Bank AG and Deutsche Bank Securities, Inc's (Deutsche Bank) motion to dismiss plaintiffs' class action complaint (Dkt. No. 10), defendant Clarion Capital Partners', LLC (Clarion) motion to dismiss plaintiffs' class action complaint, or in the alternative, for a more definite statement (Dkt. No. 17), and defendant Société Générale's (SG) motion to dismiss (Dkt. No 48). For the following reasons, the court grants the motions.

**I. Legal Standard**

Dismissal of a cause of action for failure to state a claim is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief, or where an issue of law is dispositive. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Fuller v. Norton*, 86 F.3d 1016, 1020 (10th Cir. 1996). The pleadings are liberally construed, and all reasonable inferences are viewed in favor of the

plaintiff. *Fuller*, 86 F.3d at 1020. All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. *Jojola v. Chavez*, 55 F.3d 488, 494 n. 8 (10th Cir. 1995). When resolving a motion to dismiss, the issue is not whether the plaintiffs will ultimately prevail, but instead is whether the plaintiffs are entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## II.  Facts

On January 23, 2007, Mark Hutton (Hutton) and Clear Meadow Investment LLC (Clear Meadow) initiated this class action. Defendants Deutsche Bank and Clarion separately filed motions to dismiss (Dkt. No. 10 and 17) which this court granted, in part, due to lack of response (Dkt. No. 28). After the dismissal, plaintiff Hutton filed a motion for reconsideration of the court's order (Dkt. No. 30), which was granted by this court (Dkt. No. 32). Accordingly, this court will now consider the defendants' motions, as well as SG's later filed motion to dismiss, on the merits.

Plaintiffs are Hutton, an individual, and Clear Meadow, his affiliated entity. Hutton is the owner of a construction company based in Wichita, Kansas who, according to the complaint, was advised by defendant Daniel Brooks, Jr., that Hutton could potentially earn a substantial rate of return by investing in the foreign currency markets. Hutton took that advice and implemented the foreign currency market-linked deposit strategy (MLD strategy) in late 2001. At some unspecified date after being introduced to the MLD strategy by Brooks, Hutton formed plaintiff Clear Meadow, which is wholly owned by Hutton and treated for federal tax purposes as a disregarded entity. Ultimately, Hutton suffered a loss on his 2001 tax returns, and was later audited by the Internal Revenue Service (IRS) and Kansas tax authorities. Hutton brings this

action on behalf of himself and a putative class seeking to recover losses allegedly arising from "over 19 tax strategies that the federal government has found to be unregistered tax shelters," including the MLD Strategy implemented by Hutton, that has now been challenged by the IRS and state taxing authorities.

Hutton claims, among other things, that he was misled by his attorneys and other advisors who introduced him to and advised him regarding the MLD strategy, and by Deutsche Bank and the other defendants. In the amended complaint, plaintiffs assert the following claims against all of the defendants: (1) violations of state deceptive trade practices acts and the Racketeer Influenced and Corrupt Organizations Act (RICO); (2) breach of fiduciary duty; (3) inducing breach of fiduciary duty; (4) fraud; (5) negligent misrepresentation; (6) civil conspiracy; (7) restitution or recoupment of unethical, excessive, illegal and unreasonable fees and unjust enrichment; and (8) declaratory relief.

### III.  Analysis

Plaintiffs executed an account agreement with Deutsche Bank as part of the MLD strategy, which contained a New York choice of law clause. (Dkt. No. 11, Exhibit 2). Kansas courts generally give effect to contractual choice of law provisions if the forum selected bears a reasonable relation to the contract at issue. *See, e.g. Abbot v. Chem. Trust*, No 01-2049, 2001 WL 492388, at *5 (D. Kan. Apr. 26, 2001) (applying the law designated in the choice of law provision to both contract and tort claims). Accordingly, New York law governs plaintiffs' substantive claims. Nevertheless, a federal court exercising diversity jurisdiction applies the statute of limitations of the forum state, even when the action is brought under the law of another state. *See, e.g., Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 483-84 (10th Cir. 1990);

*Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 104 F. Supp. 2d 1294, 1297 (D. Kan. 2000). Thus, although New York substantive law governs plaintiffs' common law claims, Kansas law provides the statute of limitation for these claims.

Kansas law provides a two-year statute of limitations for fraud and tort claims, including plaintiffs' claims for breach of fiduciary duty, inducing breach of fiduciary duty, fraud, negligent misrepresentation and conspiracy. *See* Kan. Stat. Ann. § § 60-513(a)(3)-(4); *see also Bagby v. Merril Lynch,* 104 F. Supp. 2d 1294, 1298-99 (D. Kan. 2000) (breach of fiduciary duty and fraud); *Phillips USA, Inc. v. Allflex USA, Inc.*, 869 F. Supp. 842, 850-54 (D. Kan. 1994) (inducing breach of fiduciary duty); *Roof-Techs Int'l, Inc. v. Kansas*, 57 P.3d 538, 545-46 (Kan. App. 2002) (negligent misrepresentation); *Masters v. Daniel Int'l Corp.*, No. 87-1290, 1992 WL 405307, at *3 (D. Kan. Dec. 3, 1992) (civil conspiracy). Kansas law provides a three-year limitations period for claims of unjust enrichment and KCPA violations. *See Alberta, Ltd. v. Starfire*, Civ. A. No. 95-2083, 1996 WL 370221, at *9 (D. Kan. June 19, 1996) (unjust enrichment); *Roy v. Young*, 93 P.3d 712, 715 (Kan. 2004) ("Actions for violations of the KCPA are governed by [Kan. Stat. Ann. § 60-512(2)], the 3-year statute of limitations."). A four-year statute of limitations governs plaintiffs' RICO claims. *See Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1234 (10th Cir. 2006).

Under Kansas law, the statute of limitations begins to run when the claim accrues, which for certain tort claims occurs when:

> the act giving rise to the cause of action first causes substantial injury, or, if the fact of the injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of the injury becomes reasonable ascertainable to the injured party . . .

4

Kan. Stat. Ann. § 60-513(b).  The term "substantial injury" is not intended to imply that the plaintiff must have knowledge of the full extent of his injuries before the statute of limitations begins; rather, a plaintiff simply must have "sufficient ascertainable injury to justify an action for recovery of the damages."  *Rigby v. Clinical Reference Lab., Inc.*, 995 F. Supp. 1217, 1222 (D. Kan. 1998) (quoting *Roe v. Diefendorf*, 236 Kan. 218 (1984)).

For purposes of commencing the statute of limitations running, the fact of injury becomes reasonable ascertainable either when the alleged tortious conduct has first caused substantial injury or at the point when the plaintiff either knew or reasonable should have ascertained that the alleged tortious conduct caused plaintiff to be injured.  *Id.* (citing Kan. Stat. Ann. § 60-513(b)).  In determining the date upon which an injury is reasonable ascertainable, a court must "invoke an objective standard based on an examination of all the surrounding circumstances." *Id*.  Further, "Kansas law does not require that the plaintiff have ironclad actual knowledge about his injury, but rather he have such notice as would permit him to discover the injury with the use of due diligence.  'Reasonably ascertainable' does not mean 'actual knowledge.'" *Austin v. U.S. Bank, Nat'l Ass'n.*, No. 03-4130, 2006 WL 980739, at *11 (D. Kan. Jan. 25, 2006).

Deutsche Bank's[1] motion asserts multiple arguments, including that all of plaintiffs' RICO and common law claims are barred by the applicable statute of limitations.  Deutsche Bank argues that the alleged wrongdoing and the plaintiffs' purported injuries became 'reasonably

---

[1] Defendants Clarion and SG incorporate by reference the arguments of Deutsche Bank's brief regarding the statute of limitations. (Dkt. No. 18, p. 5) (Dkt. No. 49, p. 6, FN. 4).  Accordingly, the court will refer to Deutsche's argument, but the ruling will apply to Clarion and SG as well.  Also, although plaintiffs replied separately to SG's motion to dismiss (Dkt. No. 53), the argument regarding the statute of limitations was literally identical, and thus the court is comfortable considering the motions all together, but for convenience, will refer only to Deutsche and plaintiffs.

ascertainable' through a reasonable investigation of publicly available information by January 14, 2002, at the latest, which is the date when the IRS published the disclosure initiative. Plaintiffs' actual knowledge regarding the IRS disclosure initiative is irrelevant, Deutsche Bank argues, because public documents and other publicly available information are sufficient to put a plaintiff on notice and commence the running of the statute of limitations. *See, e.g., Kan. Pub. Employees Ret. Sys. v. Blackwell, Sanders, Matheny, Weary, & Lombardi, L.C.,* 114 F.3d 679, 689 (8th Cir. 1997) (applying Kansas statute of limitations and finding that "public statements" including news articles, "were enough to put [the plaintiffs] on notice" of their injury); *Brueck v. Krings*, 638 P.2d 904, 908 (Kan. 1982) (fact of injury reasonable ascertainable from press reports). Accordingly, Deutsche Bank asserts that even the claim with the longest statute of limitations, the four-year RICO claim, is time barred because the limitations period expired no later than January 14, 2006, more than a year before the complaint was filed on January 23, 2007.

In response, plaintiffs do not address this specific argument. Instead, relying on the Supreme Court case of *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), Hutton argues that the statute of limitations should be tolled because he opted into a proposed class settlement in a similar matter in the case of *Ling v. Deutsche Bank AG*, No. 04-4566, (S.D.N.Y). Alternatively, Hutton argues that he is still litigating the tax shelter claim, and thus his injury has not yet accrued because it is still pending with the IRS. The court disagrees with both contentions.

*1. Tolling of the Statute of Limitations*

In *American Pipe*, the United States Supreme Court held that the statute of limitations is tolled when the failure to demonstrate numerosity is the sole reason to deny class status. *American Pipe*, 414 U.S. at 553.  The Court limited its holding, however, and noted that the statute of limitations is only tolled during the period of time between the filing of the class action and the denial of a motion for class certification "for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.*  The Court reasoned that "[a] contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive [Federal Rule of Civil Procedure 23] class actions of the efficiency and economy of litigation which is a principle purpose of the procedure." *Id.*

The Court later expanded *American Pipe* in *Crown, Cork & Seal Company, Inc. v. Parker*, to include "all asserted members of the class, . . . not just interveners." 462 U.S. 345, 350 (1983).  The Court noted:

> The commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

*Id.* at 353-54 (citation and quotation omitted).  Although *American Pipe* would arguably toll the running of the statute of limitations on most of plaintiffs' claims asserted here, all of plaintiffs' claims are nevertheless time barred even with such tolling.

As an initial matter, plaintiffs' claims for breach of fiduciary duty, inducing breach of fiduciary duty, fraud, negligent misrepresentation and conspiracy - all of which have a two year statue of limitations, as discussed above - were time barred *before* the *Ling* putative class action was even filed. The statute of limitations began to run on January 14, 2002, when the IRS published its disclosure initiative, and expired on January 14, 2004, which was well before the original putative class action complaint filed in *Ling* on June 16, 2004. Accordingly, plaintiffs' claims of breach of fiduciary duty, inducing breach of fiduciary duty, fraud, negligent misrepresentation and conspiracy are all time barred, and thus dismissed. *See Ballen v. Prudential Bache Sec. Inc.*, 23 F.3d 335, 337 (10th Cir. 1994) (noting that a "class action suit filed after the statute of limitations has expired will not save an action from being time barred.")

Plaintiffs' remaining claims for unjust enrichment, KCPA violations and RICO are also time-barred. A period of approximately two years and five months elapsed between the time Plaintiffs' claims accrued (January 14, 2002) and the time the original putative class action complaint in *Ling* was filed (June 16, 2004). On May 26, 2005, the *Ling* court dismissed the plaintiffs' second amended class action complaint. *See Ling v. Deutsche Bank AG*, No. 04-4566, 2005 WL 1244689 (S.D.N.Y. May 26, 2005). Although the plaintiffs were granted leave to file a third amended class action complaint by no later than July 25, 2005, *see id*. at *7, they never did. Once the second amended class action complaint was dismissed on May 26, 2005, the statutes of limitations on Plaintiffs' claims again began to run, and a period of approximately one year and eight months elapsed between the time that the second amended class action complaint in *Ling* was dismissed and Plaintiffs filed their Complaint. Thus, because a total of approximately four years and one month elapsed from the time Plaintiffs' claims accrued until they filed their

original Complaint in this action, all of Plaintiffs' claims are barred even considering the period of time Plaintiffs' claims were arguably tolled under *American Pipe*. The purpose behind the statute of limitations tolling established in *American Pipe* and extended in *Crown Cork* was to prevent potential class members from being forced to file motions or separate actions to protect themselves in the event class certification was denied. That is clearly not the case here, where plaintiffs' delay in filing cannot seemingly be attributed to a class certification in the prior case, and thus, this ruling comports with the public policy underlying *American Pipe*.

Further, the tolling in *American Pipe* is only available for the same claims asserted in the putative class action complaint, and is not to be "abused by the assertion of claims that differ from those raised in the original class suit." *Shriners Hosp. For Children v. Qwest Commc'ns Int'l Inc.*, No. 04-00781, 2007 WL 2801494, at *3 (D. Colo. Sept. 24, 2007) (quoting *Crown Cork & Seal Co.*, 462 U.S. at 355 (Powell, J, concurring)). Thus, because the *Ling* putative class action did not include any state consumer protection act claims, let alone a claim for violations of the KCPA, *American Pipe* does not even apply to plaintiffs' KCPA claim.

### 2. Pending Claims with the IRS

Plaintiffs alternatively argue that the action is not time-barred because Hutton is still litigating a tax shelter claim in the United States Court of Federal Claims, and thus, the statute of limitations had arguably not began to run. Plaintiffs rely on the Kansas case of *Berberich v. Payne & Jones* to argue that their cause of action cannot accrue until the injury was readily ascertainable, which would not be possible until the pending claim with the IRS was settled. 3 F. Supp. 2d 1199, 1203 (D. Kan. 1998). What the plaintiffs fail to acknowledge in this reliance,

9

however, was that the court in *Berberich* ultimately dismissed the claim as premature.  Based on plaintiffs' own argument, the claim would be premature because, as a general rule, "the underlying litigation must be finally determined before a cause of action accrues" and the only exception is when "it is clear that the plaintiff in a potential legal malpractice action has incurred injury and [ ] it is reasonably ascertainable that such injury was the result of the defendant attorney's negligence." *Berberich*, 3 F. Supp. 2d at 1202 (quoting *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 270 (1991)).  The exception does not apply in this case, and thus, even if plaintiffs' argument that the statute of limitations has not yet begun because of the litigation of the tax shelter claim had merit, this court would still dismiss the claim because the issue would not be justiciable because plaintiffs would lack standing.

Even if the court found that the plaintiffs claim was ripe, it would not stop the statute of limitations from running.  Other courts outside this district have found allegations similar to the ones plaintiffs raise sufficient to state immediate and definite injury for ripeness purposes, and, logically, statute of limitations purposes.  In *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363 (S.D.N.Y. 2004), for example, the defendants made an argument similar to the plaintiffs argument here, that because there had been no final resolution of the plaintiffs' dispute with the IRS and state taxing authorities, the plaintiffs' claims were not ripe.  *See Seippel*, 341 F. Supp. 2d. at 371. The court rejected this argument, explaining that:

> [t]he fact that the Seippels may not ultimately owe the tax authorities additional taxes does not mean that their action is not ripe. The Seippels allege that they have been damaged, and continue to be damaged, as a result of defendants' conduct. Their damages include the fees paid to defendants, losses incurred in the COBRA transactions, expenses paid to accountants and attorneys that are assisting the Seippels in defending the audits, losses caused as a result of being forced to sell assets at distressed prices to meet tax obligations, and tax penalties already assessed

and paid. These injuries are immediate and definite, and therefore satisfy the case or controversy requirement contained in Article III of the Constitution.

*Id*. Because Plaintiffs here claim similar injuries in addition to tax penalties and interest, they, too, allege immediate and definite injury sufficient to commence the statute of limitations running, and their claims would thus be untimely for the reasons discussed above, and dismissed, even under the alternative argument.

IT IS ACCORDINGLY ORDERED this 21st day of March, 2008, that defendant Deutsche Bank and Deutsche Bank Securities' motion to dismiss (Dkt. No. 10 ), defendant Clarion Capital partners, LLC's motion to dismiss (Dkt. No. 17), and defendant Société Générale's motion to dismiss (Dkt. No 48) are granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE